2010 Ark. App. 809

Clayton ELLIOTT, Appellant

v.

STATE of Arkansas, Appellee.

No. CA CR 10–185.

Court of Appeals of Arkansas.

Dec. 8, 2010.

Louis L. Loyd, Malvern, for appellant.

Dustin McDaniel, Atty. Gen., Karen Virginia Wallace, Asst. Atty. Gen., Little Rock, for appellee.

JOHN MAUZY PITTMAN, Judge.

Appellant was charged with rape. After a jury trial, he was convicted of that offense and sentenced to twenty-five years' imprisonment. On appeal, he argues that the evidence is insufficient to support his conviction. He also argues that the trial court erred in permitting the State to interrupt the victim's testimony after she became unresponsive and to later recall her for further testimony, and in permitting the introduction of an anatomical diagram of a male body on which appellant's name was written. We affirm.

Appellant was convicted of violating Ark. Code Ann. § 5–14–103(a)(3)(A) (Supp. 2009), which provides that a person commits rape if he engages in sexual intercourse or deviate sexual activity with an other person who is less than fourteen years of age. "Sexual intercourse" means penetration, however slight, of the labia majora by the penis. Ark.Code Ann. § 5–14–101(11) (Supp.2009). "Deviate sexual activity" includes the penetration, however slight, of the anus or mouth of a person by the penis of another person. Ark.Code Ann. § 5–14–101(1)(A) (Supp. 2009).

Appellant challenges only the sufficiency of the evidence to prove the element of penetration. In reviewing the sufficiency of the evidence on appeal from a jury verdict, we view the evidence in the light most favorable to the verdict, considering only the evidence supporting the verdict, to determine whether it is supported by substantial evidence. *Kelley v. State,* 375 Ark. 483, 292 S.W.3d 297 (2009). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* A rape victim's uncorroborated testimony describing penetration may constitute substantial evidence to sustain a conviction of rape, even when the victim is a child. *Brown v. State,* 374 Ark. 341, 288 S.W.3d 226 (2008). It is the function of the jury, and not the reviewing court, to evaluate the credibility of witnesses and to resolve any inconsistencies in the evidence. *Id.*

It is unfortunately necessary to recite the evidence in some detail. The victim is appellant's daughter. She was nine years old at the time of trial. Appellant's eleven-year-old son testified that he and the victim used to live in a house with their father. While they lived there, he said, appellant would make them watch pornographic movies. He testified that he slept in a bedroom with his brother but that the victim slept with appellant in his bed. Once, he said, while they lived with appel-

lant, he stood in the door looking into appellant's room and saw that appellant and the victim were both naked in appellant's bed. The victim had duct tape on her hands and feet, and appellant was putting his penis on the victim's vagina. The victim's brother said that seeing this made him feel bad. He told his mother what he saw.

The victim testified that she and her brothers used to live with appellant. Their mother did not live with them at that time. Appellant, she said, touched her with his penis many times, perhaps more than twenty. She said that, when she lived there, appellant put gray duct tape over her mouth and taped her wrists together behind her. She was naked, looking at the wall. Appellant was behind her, naked, and appellant's penis was touching her anus.

■ Candace Kimball, a forensic examiner at the Texarkana Children's Advocacy Center, testified as an expert and stated, without objection, that she interviewed the victim after the incident, that she found the victim to be believable and not to have been coached, and that the victim named the perpetrator. Vikki Hurst, R.N., testified as an expert sexual-assault nurse-examiner. She stated without objection that, as part of the examination she conducted, the victim stated positively that the abuser's penis penetrated her mouth and that, although the victim denied that her anus had been penetrated, a reflexive opening of the anus indicative of sexual assault was observed during her physical examination of the victim. Based on her examination, her expert opinion was that the victim had been penetrated orally and anally. On this record, we hold that the jury's finding of penetration is supported by substantial evidence.

■ Next, appellant argues that the trial court erred in overruling his objection to permitting the victim's testimony to be interrupted and suspended during the State's direct examination in open court. After a few preliminary questions regarding her age and qualification as a witness, the nine-year-old victim became unresponsive. The trial court asked her if she would like to take a break and, after the jury was sent out, the State moved to interrupt her testimony and be allowed to recall her to the stand if she was later able to testify. The trial court granted this motion over appellant's objection and request to immediately cross-examine the victim, noting that nothing had yet been elicited that was damaging to appellant. Appellant now asserts that the trial court abused its discretion in permitting the child to stand down and be recalled without first being immediately subject to cross-examination. We disagree.

■ The trial court has considerable discretion in regulating the presentation of proof. Arkansas Code Annotated § 16–43–703 (Repl.1999) gives the trial court discretion to allow the reexamination of a witness, and Arkansas Rule of Evidence 611(a)(3) imposes a duty on trial courts to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence in order to protect witnesses from harassment or undue embarrassment. The witness in this case was a nine-year-old child asked to testify concerning heinous acts perpetrated upon her by her own father. The scope of cross-examination is limited to the subject matter of the direct examination, *see* Ark. R. Evid. 611(b) (2010), and the victim had at that point given no testimony that was prejudicial to appellant. Appellant was deprived of no right by being restrained from subjecting to immediate cross-examination a child who was already too frightened to testify. The youth and timidity of the witness are important factors mitigat-

ing against a finding of abuse of discretion in such situations, *see Hamblin v. State,* 268 Ark. 497, 597 S.W.2d 589 (1980), and we hold without hesitation that the trial judge properly employed his discretion in this instance.

■ Appellant next argues that the trial court erred in allowing into evidence an anatomical chart of a male body with the word "Clayton" written on the chart, asserting that it was inadmissible hearsay and that its probative value was outweighed by the potential for unfair prejudice. We disagree.

The name written on the chart was not hearsay, and it was not inadmissible. It was introduced in conjunction with the testimony of Vicki Hurst. She testified that she was a registered nurse employed as the manager of the Ambulatory Care Unit of St. Michael's Hospital in Texarkana, and that she was also a certified sexual-assault nurse-examiner. In her latter capacity, she examined the victim on July 21, 2008. The procedure involved taking a systematic and detailed history from the victim, making a thorough head-to-toe assessment, and performing a detailed genital exam looking for trauma.

Nurse Hurst explained that children use various idiosyncratic terms when describing genitalia, and that it was therefore important to determine how children being examined referred to various body parts before taking their history. To this end, the victim was shown anatomical drawings of male and female bodies and was asked what words she used to describe various parts. The victim's responses were written on the drawing by Nurse Hurst. The exhibit at issue was a drawing of a male body on which Nurse Hurst had written the victim's responses to her questions concerning terminology. The drawing had the word "Clayton" written near the male body. On cross-examination, Nurse Hurst

stated that the victim told her to write that on the drawing while identifying anatomical parts. She also stated that she did not know who "Clayton" was because the victim did not directly identify her abuser during her narrative history, telling Nurse Hurst only that "he" had been touching her longer than she could remember and that the last time was when she was asleep at White Oak.

■ "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted. Ark. R. Evid. 801(c). We do not think that the drawing on which the word "Clayton" was written was offered to prove that appellant was the abuser—he was identified at trial by the unequivocal testimony of the victim, and the State sought to introduce the drawing in the context of Nurse Hurst's testimony concerning the history given by the victim. Nevertheless, even if this document had been introduced for the purpose of proving that "Clayton" was the victim's abuser, it would not be inadmissible hearsay. The Arkansas Supreme Court has expressly held that the medical-treatment exception to the hearsay rule found in Rule 803(4) permits hearsay identifying the perpetrator in the special case of a child-abuse victim where the abuser is a member of the child's immediate household and the statement is made in the course of a medical examination for the purpose of diagnosis and treatment. *See generally Hawkins v. State,* 348 Ark. 384, 72 S.W.3d 493 (2002). Here, Nurse Hurst testified that she was an expert sexual-abuse examiner trained to deliver comprehensive medical care to sexual-assault patients, looking from head to toe in order to diagnose and treat any trauma the patient has received. The history that she obtained was directed to that purpose, and prevention of a recurrence of abuse is a

paramount consideration in the treatment of children who have been sexually abused in the home. *Hawkins v. State, supra.* On this record, we cannot say that the trial court clearly erred in finding that this exhibit was not inadmissible hearsay.[1]

Finally, appellant argues that the trial court erred in not excluding the exhibit under Ark. R. Evid. 403 because its probative value was outweighed by the potential for unfair prejudice. We do not agree. The victim-declarant was present at trial and identified appellant as the rapist by her own unequivocal testimony. Moreover, the victim's brother witnessed the victim being abused by appellant and testified to that abuse. Additionally, forensic examiner Candace Kimball testified, without objection, that the victim had credibly named a single perpetrator during Kimball's interview with the victim. Given that the exhibit was admissible, and that appellant was specifically identified as the abuser by the declarant at trial, it is difficult to see how appellant might have been unfairly prejudiced by the introduction of this inexact and tangential reference in an exhibit relating to the anatomical terminology used by the child victim. Even if this exhibit had been erroneously admitted, it was cumulative to a great deal of more precise identification evidence, including the testimony of Arkansas State Police child-abuse investigator David Hampton, who said that, during his interviews, the victim identified Clayton Elliott as the perpetrator. It is commonplace that evidentiary error is harmless if the same or similar evidence is otherwise introduced. *See Wright v. State,* 368 Ark. 629, 249 S.W.3d 133 (2007).

Affirmed.

VAUGHT, C.J., agrees.

HART, J., concurs.

JOSEPHINE LINKER HART, Judge, concurring.

I agree that this case should be affirmed, but I write separately because I cannot subscribe to the majority's rationale in disposing of the third point on appeal. The so-called anatomical chart with appellant's name written on it was, without a doubt, inadmissible hearsay. Rule 801 of the Arkansas Rules of Evidence defines hearsay as a statement made by an out-of-court declarant that is repeated in court by a witness that is offered to prove the truth of the matter asserted in the statement. The name on the anatomical chart, which depicted male genitalia, and was used in a forensic rape

---

1. It is difficult to respond to the concurring judge's assertion that the examination was not for the purpose of medical treatment in light of Nurse Hurst's unequivocal testimony that the purpose of obtaining a history was to "diagnose and treat that patient," and the fact that the history was taken immediately before a comprehensive physical examination of the child. The concurring judge's insistence that the victim's statement was not the result of questioning is likewise puzzling in light of Nurse Hurst's testimony that the word "Clayton" was received in response to her questions to the victim during the process of labeling the anatomical diagrams:

Q: But the name Clayton doesn't mean anything to you?

A: No, ma'am.

Q: And just—this what you—Who purportedly was this meant to be?

A: Sarah. Her name's on there.

Q: And who is this purporting to be?

A: Clayton, which would be the perpetrator. When I'm doing the exams with children, with all my anatomical drawings, I have the patient, and then I have the perpetrator.

Q: So, you've testified that you believe the perpetrator is the person at White Oak, and when you were told what to write, this is what you wrote?

A: Yes.

Q: Clayton.

A: That was from [the victim].

examination, was obviously offered to suggest who the perpetrator was.

The second part of the majority's analysis is not persuasive. Hearsay is generally inadmissible unless it fits within one of the exceptions set forth in Arkansas Rule of Evidence 803 (2009). *Pace v. State*, 2010 Ark. App. 491, 375 S.W.3d 751. I disagree with the majority that the hearsay was admissible under the medical-diagnosis-or-treatment exception stated in Arkansas Rule of Evidence 803(4) as interpreted by *Hawkins v. State*, 348 Ark. 384, 72 S.W.3d 493 (2002). The rule states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

In *Hawkins*, the supreme court held that identification of the perpetrator of a child sexual-abuse victim was reasonably pertinent to diagnosis or treatment because it could prevent further abuse and helped the treating physician fulfill his duties as a mandatory reporter.

First, and I do not intend to put too fine a point on this, Vikki Hurst was conducting a *forensic* examination. Where hearsay is concerned, albeit from the perspective of confrontation clause jurisprudence, this fact has important legal significance. *See Seely v. State*, 373 Ark. 141, 282 S.W.3d 778 (2008). Second, according to Hurst's testimony, she just wrote "Clayton" because the victim "told me to write that and I don't know who it is." Hurst

did not admit to trying to elicit the identity of the perpetrator at that point, and she did not testify that the name was in any way used to "treat" the victim. Hurst was gathering evidence, not treating the victim; the victim did not require medical intervention. Conversely, in *Hawkins*, the doctor/witness was attempting to diagnose the etiology of the victim's trauma. Accordingly, this fact makes the instant case readily distinguishable from *Hawkins*. The hearsay in the instant case is more akin to the hearsay in *Flores v. State*, 348 Ark. 28, 43, 69 S.W.3d 864, 873 (2002), where the supreme court reversed and remanded because of the erroneous admission of hearsay. Like the instant case, while a statement was made to a medical professional, there was no *questioning* by a doctor, or any medical professional, that "precipitated the hearsay statement." *Id.*

Nonetheless, as the majority has acknowledged, this obvious evidentiary error does not require us to reverse this case because the error was harmless. It is well settled that evidentiary rulings are subject to harmless-error analysis, *Sparkman v. State*, 91 Ark.App. 138, 208 S.W.3d 822 (2005), and we are bound to affirm if the error is harmless beyond a reasonable doubt. Here the victim unequivocally testified that the perpetrator was the appellant, Clayton Elliot. In *Morgan v. State*, 333 Ark. 294, 971 S.W.2d 219 (1998), our supreme court held that evidentiary error is harmless if the same or similar evidence was otherwise introduced. That is the situation here.